## O'Hara and Wife *versus* Baum, for use, &c.

A mortgage given by a married woman to indemnify an endorser of her husband's paper against loss, is in no manner for the benefit of the holders of the paper, and the assignment of the mortgage by the mortgagee only carried to the assignee the right to recover the amount actually paid on the paper by the mortgagee, up to the time of the assignment. The assignment was a limitation of the security, to the amount then actually paid, and a reassignment of the mortgage could not restore it as a security for more than the amount paid prior to the assignment.

November 14th 1878. Before SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. AGNEW, C. J., and WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1877, No. 71.

Scire facias sur mortgage, by A. F. Baum for use of S. P. Fulton, The Pittsburgh Savings Bank, The City Deposit Bank & Trust Co., and the National Trust Co., against Michael O'Hara and Frances A. O'Hara, his wife.

At the trial, it appeared that Mrs. O'Hara joined with her husband in the execution of a mortgage, on August 22d 1871, to A. F. Baum, to indemnify the latter to the extent of $15,000, for any loss he might sustain by reason of endorsements already made or to be made, of the paper of said Michael O'Hara. Under said mortgage, Baum endorsed over $15,000 of O'Hara's paper, none of which, with a trifling exception, was ever paid by either O'Hara or Baum, and which was all in the hands of the use parties plaintiffs, who were holders for value. On June 5th 1873, Baum assigned said mortgage to S. B. W. Gill, who, on September 3d 1873, re-assigned it to Baum, who in turn, on May 23d 1874, assigned it to S. P. Fulton. Baum had paid a small portion of the paper, and Fulton procured some of it after the assignment to him, but the bulk of it was in the hands of the use plaintiffs.

Among the points submitted by the defendants, were the following, to which are subjoined the answers of the court, Fetterman, J. :

1. That this mortgage was to indemnify A. F. Baum against loss or damage for the use of his name upon the paper of Michael O'Hara, and not a security for the paper in whosoever hands it might come, and outside parties holding such paper, have not, by virtue of their ownership of said paper alone, any rights in said mortgage, and it being shown by the plaintiffs' evidence that S. P. Fulton is assignee only of said mortgage, without any evidence that he holds the same for any one but himself, no recovery can be had thereon for such outside parties; and notes held by the National Trust Company, J. T. Stockdale, trustee of the Pittsburgh Savings Bank, the City Deposit Bank and Trust Company, &c., should be excluded from the consideration of the jury.

[O'Hara *v.* Baum.]

Ans. " That point is refused. As I have already stated, if these parties held this paper, and it was taken as paper secured by this mortgage, they would be entitled to recover; and as to the mortgage being assigned to Mr. Fulton in trust for these parties, it is immaterial whether Mr. Fulton was interested in the matter or not. But Judge Mellon testifies that Mr. Fulton paid over the amount of his claim, and took an assignment of it. If he did, he would be an interested party, but independent of that Mr. Baum would have a right to assign this mortgage to whomever he saw proper, to hold for the benefit of 'the parties who were to be protected by the mortgage."

3. If the plaintiff is entitled to recover at all, it would be only for such notes as A. F. Baum had lifted at the date of the assignment to S. P. Fulton.

Ans. " Refused."

4. The assignment of the mortgage to S. P. Fulton was an abandonment of it as an indemnity against the said paper, and none of said paper being shown to have passed to said Fulton or to have come into his possession prior to the bringing of this suit, the plaintiff cannot recover.

Ans. " Refused."

5. That as A. F. Baum assigned said mortgage absolutely, as appears by the record, and directly thereafter went into bankruptcy, the liability of Mrs. O'Hara under the mortgage, if liable at all, would be for only as much as is shown to have been said Baum's loss and damage up to that time.

Ans. " That point is refused. He is not only liable on this mortgage for the amount Baum paid prior to his bankruptcy, but for all the other paper I have spoken of up to the amount of $15,000 that was endorsed by him under and in pursuance of the arrangement of this mortgage."

6. Under this mortgage and the evidence, the plaintiff is not entitled to recover, at least for notes (certain notes specified).

Ans. " Refused."

9. While the mortgage was in S. B. W. Gill as assignee it was not any indemnity for any paper issued by O'Hara and endorsed by Baum.

Ans. " Refused."

In the general charge, the court, inter alia, said :—

"All notes that were endorsed by A. F. Baum for Michael O'Hara, in pursuance of the arrangement, and which this mortgage was given to secure, not exceeding $15,000, are covered by it, and if in the hands of third parties, they would be entitled to the rights of Baum under this mortgage, and [if Baum assigns it to Mr. Fulton or to any person else for his own benefit, to the extent that he had paid out on those notes and for the benefit of other parties who held that paper, they would be entitled to come in through Baum,

and claim the benefit of the mortgage.] So that in this case, [if you find that these notes in suit were executed by O'Hara and endorsed by Baum, under and in pursuance of this mortgage, and have not been paid by Michael O'Hara, the maker of the paper, and are still held by these parties for whose use this suit is now brought, they would be entitled to a verdict for the full amount, not exceeding $15,000, with interest on the notes.] If you find the notes in suit were all executed by O'Hara and endorsed by Baum under and in pursuance of this indemnity he had to secure him, and were discounted for O'Hara, he receiving the proceeds thereof, and that he has never paid them, the plaintiffs would be entitled to your verdict.

"[It is further contended that the notes held by the National Trust Company were executed and delivered to the bank or endorsed by Baum during the interval that he had assigned this mortgage. It appears by the record that he assigned the mortgage to Gill on June 5th 1873, and that it was re-assigned to him September 3d 1873. It is said that while it was assigned to Gill, the notes held by the National Trust Company were executed, and the point is made that those notes would not be protected by the mortgage. Whether they were or were not made at that time, if Baum assigned this mortgage to Gill for the purpose of securing him on some matters between themselves, it would not, as against Mrs. O'Hara, affect Baum's right under this mortgage (if he still endorsed those notes), to get the mortgage back to secure him. He would have a right, notwithstanding the temporary assignment of the mortgage to Gill, to hold this indemnity as against those notes also."]

Verdict for plaintiff for $19,575, and after judgment, defendants took this writ, assigning for error, inter alia, the answers to the foregoing points and the portions of the charge in brackets, noted above.

*M. A. Woodward,* for plaintiffs in error.

*A. M. Brown* and *S. P. Fulton,* for defendants in error.

Mr. Justice GORDON delivered the opinion of the court, January 6th 1879.

The amendment allowed by the court by which certain alleged equitable plaintiffs were added to the record, was of no moment whatever, since nothing was thereby added to the responsibility of the mortgagor. She was accountable to Baum, the mortgagee, alone, and not to the use plaintiffs. If she owed him nothing, they could get nothing ; on the other hand, if he had the right to recover, it was of no consequence to her how matters were arranged between Baum and his assigns. It was, however, a mistake to

[*O'Hara v. Baum.*]

treat the case as though Baum were a trustee for the endorsees of the notes made by O'Hara, or to suppose that the mortgage inured to the benefit of such endorsees. The mortgage of Mrs. O'Hara was, by its terms, intended to indemnify Baum personally against any loss that might happen to him by reason of his endorsement of O'Hara's paper, and if, by any means, or for any reason, he was released from payment that was the end of her obligation. She was not bound to take care of the paper, that was the maker's business, she was only bound to see that no damage resulted to Baum by reason of his connection with it. Hence, the mistake in treating the mortgage as a collateral guaranty of the paper, and the holders of it as having an equitable right in that mortgage, whereas in Baum alone was that right, and that only to the extent of such of the O'Hara notes as he might be obliged to pay. For the undertaking of Mrs. O'Hara being only that of indemnity, she having, herself, no interest in the paper, she must be regarded as standing in a position not less favorable than that of a prior endorser. But it is held in Byles on Bills, 5th Am. ed. 576, note, that before an endorser can bring suit against prior parties, he must take up the bill. Unless, therefore, it was otherwise intended, and in case of a married woman, there can be no intendment not apparent on the face of her deed, it must be presumed that those who took the O'Hara paper took it on the credit of the maker and endorser, and not on the credit of the mortgage: Peterson *v.* Willing, 3 Dal. 506.

Again, how could Baum continue to hold the beneficial interest in this mortgage after his assignment to Fulton? As long as he owned it, it continued to be his personal security, but when he parted with it, it could no longer have that effect, for he had then no more right in it than in the mortgage of a stranger. He assigned to Fulton "the mortgage" and "all the moneys secured thereby." Fulton was thus invested with all Baum's right; he could, through the mortgage, charge Mrs. O'Hara's land with all the moneys Baum had paid on the endorsements for Michael O'Hara, and that was all that could be charged against it. Fulton's right in this mortgage being thus absolute and unqualified, what was left for Baum? Had not Fulton the right to exhaust the mortgaged premises in satisfaction of his claim? Had he not the power to satisfy the mortgage, or to assign it to the mortgagor, or to whomsoever he pleased? Certainly he owned the whole and every part of it, hence we cannot understand how, after the date of the assignment, it could continue in Baum as security for notes endorsed by him after that time. And when he had thus put an end to the mortgage as a continuing indemnity to himself, and had, by his own act, limited it, as a security, to the moneys which he had then actually paid, we cannot understand how it could afterwards be enlarged by a re-assignment. Would he, by that act, get any thing more than Fulton had? If so, then the re-assignment had the effect to restore to him

[O'Hara *v.* Baum.]

powers which he had voluntarily abandoned; to revoke his own deliberate limitation of the indemnity, and in this manner rebind a released surety.   This would, in effect, amount to a re-execution of a mortgage by implication; but this cannot be permitted, and especially as against the rights of a married woman.   ·

The foregoing reasoning sustains the defendant's assignments of error from the first to the tenth inclusive; the rest are dismissed as untenable.

The judgment is reversed, and a *venire facias de novo* ordered.